IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER FORTE                    *
                                  *
v.                                *      Civil Action No. WMN-14-1490
                                  *
BOARD OF EDUCATION                *
OF HARFORD COUNTY <u>et al.</u>          *
                                  *
      *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

<u>**MEMORANDUM**</u>

Pending before the Court is Defendant Board of Education of Harford County's Motion to Dismiss.  ECF No. 15.  The Court determines that no hearing is necessary, Local Rule 105.6, and for the reasons stated herein, the motion will be granted in part and denied in part.

**I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

Ms. Forte brings this action against the Board of Education of Harford County (the Board) and Harford County Public Schools pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 <u>et</u> <u>seq.</u> (ADA), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 <u>et</u> <u>seq.</u>, and Maryland contract law for the Board's[1] alleged failure to

---

[1] Although Ms. Forte named Harford County Public Schools as a defendant in her complaint, it does not exist as a legal entity.  <u>See</u> Md. Code Ann, Educ. § 3-104; <u>James v. Frederick Cnty. Pub. Schs.</u>, 441 F. Supp. 2d 755, 758 (D. Md. 2006).  The Board has consented to treat claims against the Harford County Public Schools as being against the Board of Education of Harford County without need for amendment.  ECF No. 8-1 at 1.

accommodate her disabilities, creation of a hostile work environment, retaliation, and breach of a prior settlement agreement between the parties.  Ms. Forte suffers from "mental retardation and seizure disorder," ECF No. 13 ¶ 2 (Amended Complaint), and has a disability "consist[ing] of low cognitive abilities, a short attention span, poor memory, and behavioral abnormalities"  Id. ¶ 20.

Ms. Forte was hired by the Board in June 2009 as a mailroom clerk in accordance with a settlement agreement entered into by her and the Board in order to dispose of an ADA discrimination and retaliation suit she filed in this court in November 2008. The May 2009 Settlement Agreement also memorialized the following accommodations to be taken by the Board:

(1)   Supervision: the Board would provide a supervisor to directly oversee and evaluate Ms. Forte's performance;

(2)   Job Skills Assessor: the Board would partially pay for an assessment of skills by a job skills expert selected by Ms. Forte;

(3)   Job Coach: the Board would work with Ms. Forte's qualified job coach to help her with assigned job duties and to familiarize her with the work environment;

(4)   ADP: the Board would execute an adaptive progressive development plan (ADP) during the six-month

probationary period created collaboratively by Ms.

Forte, the skills assessor, job coach, and supervisor;

(5) Early Job Evaluations: the Board would provide at

least two formal performance evaluations to provide

feedback to Ms. Forte during the probationary period;

and

(6) Work Load Requirements: the Board would take steps to

insure that work would not accumulate on Ms. Forte.

Id. ¶ 25. The Settlement Agreement also contained a dispute

resolution clause that provided that

"[t]he parties agree to submit any dispute that arises
over the interpretation and implementation of this
Agreement to United States Magistrate Paul W. Grimm of
the United States District Court for the District of
Maryland (Northern Division), who shall retain
jurisdiction over this matter for the sole purpose of
resolving disputes."

Id.

Ms. Forte states that for the first five months of her

employment, the Board reasonably accommodated her disability by

"supporting her job coach and initiating other accommodations

agreed upon in the Settlement Agreement and required under the

ADA and Rehabilitation Act." Id. ¶ 3. She then alleges that

from November 2009 onward that the working relationship between

her and her employers disintegrated.

At first, Ms. Forte and the Board agreed upon an ADP which

required job coaching and feedback from Board employees regarding her performance.  In this, the ADP reinforced the reasonable accommodations spelled out in the Settlement Agreement.  By the time of her termination in November, 2011, however, Ms. Forte's allegations paint a picture of a work environment in which she was isolated and stymied by the actions of her coworkers and supervisors.  She alleges that she was placed in an isolated working environment, with limited personal contact, and was not allowed to leave unless on a supervisor's schedule.  ECF No. 13 ¶ 37.  When she did interact with co-workers, they teased her, criticized her work, and altered the lights in her working environment without her permission.[2]

This work environment was exacerbated by the Board's failure to follow the ADP that was created for her.  First, Ms. Forte was allowed to have her phone, which was noted in the ADP as a distraction for her, but then criticized for being distracted by the phone.  Id. ¶ 38.  She was given lengthy documents and booklets to shred with a small-capacity machine, but then criticized for jamming the shredder.  Id. ¶ 39.  She was required to stand for long amounts of time, even though the ADP stipulated that she was to stand for only an hour at a time. Finally, even though her ADP outlined steps for more

---

[2] In her response, Ms. Forte further explains that switching the lights on and off was for the purpose of "agitating her disability."  ECF No. 16 at 27.

responsibility at work, Ms. Forte was limited by her supervisors in what she could do.

Ms. Forte also alleges that she did not receive the feedback and job coaching required to accommodate her disability.  She states that she did not receive the required formal evaluations during the probation period beyond a brief memorandum in July, 2009, reminding her of her duties as mailroom clerk.  When Ms. Forte had a question regarding her job performance, she was criticized and reprimanded by supervisors. A significant amount of time would pass during which Ms. Forte did not even know who to consult when she had a question regarding her job.  Ms. Forte had access to a job coach only until August 2010, around the same time that she received her first negative performance review, in the form of a letter sent to her attorney.

On November 28, 2011, Ms. Forte was called into a meeting during which she was fired from her position as mailroom clerk. The termination letter stated that she was being terminated for an "extended period of unsatisfactory work performance." Id. ¶ 59.  Ms. Forte alleges that, but for the Board's failure to accommodate her disabilities as previously agreed, poor performance would not have been at issue.  Six months after her termination, she sent a letter to Judge Paul W. Grimm regarding the potential breach of the Settlement Agreement.  Judge Grimm

ultimately declined to decide the dispute between the parties,
writing "[i]f, as it appears to me, that each is convinced that
they are right, and the other wrong, then it may be that
litigation of the dispute in the appropriate forum is the only
way to achieve a final resolution."  ECF 15-3 at 2.

In May of 2014, Ms. Forte filed this instant action.  The
Board filed a motion to dismiss, ECF No. 8, to which Ms. Forte
responded by filing an Amended Complaint, ECF No. 13, and a
Response in Opposition to the Board's Motion, ECF No. 14.  The
Board then renewed its Motion to Dismiss, ECF No. 15, which is
now fully briefed.  In its Motion, the Board argues, first, that
all of Ms. Forte's claims are barred by the Eleventh Amendment
or, in the alternative, are limited in the types of recovery Ms.
Forte may seek.[3]

## II.  <u>LEGAL STANDARD</u>

Defendant Board's motion is governed by Fed. R. Civ. P.
12(b)(6).  In evaluating a motion to dismiss filed pursuant to
Rule 12(b)(6), the Court must accept as true all well-pled

---

[3] The Board's Motion to Dismiss addresses Ms. Forte's Rehabilitation Act
claims to the extent that they may be subsumed by her claims for breach of
the Settlement Agreement.  ECF No. 15-1 at III.A.  The Motion is otherwise
silent as to the application of sovereign immunity to the Rehabilitation Act
claims.  The Court finds that Congress has expressly abrogated sovereign
immunity as to claims under the Rehabilitation Act and as such, Ms. Forte's
Section 504 claims are not limited by any conditional waiver.  42 U.S.C. §
2000d-7 ("[A] state shall not be immune under the Eleventh Amendment of the
Constitution of the United States from suit in Federal Court for a violation
of section 504 of the Rehabilitation Act."); <u>accord</u> <u>Lane v. Pena</u>, 518 U.S.
187, 200 (1996).

allegations of the complaint and construe the facts and
reasonable inferences derived therefrom in the light most
favorable to the plaintiff.  See Ibarra v. United States, 120
F.3d 472, 474 (4th Cir. 1997).  To survive dismissal, "a
complaint must contain sufficient factual matter . . . to 'state
a claim to relief that is plausible on its face.'"  Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v.
Twombly, 550 U.S. 554, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Iqbal, 556
U.S. at 678 (citing Twombly, 550 U.S. at 556).  A court need not
accept a plaintiff's legal conclusions as true, as "[t]hreadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  Id.  Thus,
"[d]etermining whether a complaint states a plausible claim for
relief will . . . be a context-specific task that requires the
reviewing court to draw on its judicial experience and common
sense."  Id. at 679.

## III. ANALYSIS

The Board argues that it is entitled to sovereign immunity,
pursuant to the Eleventh Amendment of the United States
Constitution, as to all of Ms. Forte's claims.  The Eleventh
Amendment provides that "[t]he judicial power of the United

7

States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974). This immunity applies to agencies and instrumentalities of a State. Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). As a matter of Maryland law, the Board is an agency of state government. Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert, 973 A.2d 233, 236 (Md. 2009). Therefore, the Board is entitled to Eleventh Amendment immunity unless this immunity has been waived by statute "'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'" Lee-Thomas v. Prince George's Cnty. Pub. Schs., 666 F.3d 244, 250 (4th Cir. 2012) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 240 (1985)).

Through various statutory provisions, Maryland has waived its sovereign immunity and consented to be sued in certain courts for certain matters. At issue here are two separate statutory provisions: Md. Code Ann., Cts. & Jud. Proc. § 5-518 (hereinafter "C.J.P. 5-518") and Md. Code Ann., State Gov't § 12-201 (hereinafter "S.G. 12-201"). C.J.P. 5-518 provides a

limited waiver of the sovereign immunity of county education
boards, stating that "a county board of education may not raise
the defense of sovereign immunity to any claim of $100,000 or
less" but allowing "a county board of education . . . may raise
the defense of sovereign immunity to any amount claimed above
the limit of its insurance policy or, if self-insured . . .
above $100,000."  S.G. 12-201, on the other hand, governs waiver
of sovereign immunity when the claim involves a contract, and
forbids the State, its officers, and its units from raising "the
defense of sovereign immunity in a contract action, in a court
of the State, based on a written contract that an official or
employee executed for the State . . . [while] acting within the
scope of the authority of the official."  In order for S.G. 12-
201 to apply, the claimant must file suit within one year from
either the date on which the claim arose or completion of the
contract.  Md. Code Ann., State Gov't § 12-202.  S.G. 12-201 has
been further limited by Maryland case law to only waive immunity
in state, not federal, courts.  State v. Sharafeldin, 854 A.2d
1208, 1219 (Md. 2004) ("There was clearly no intent on the part
of the Legislature to waive the State's Eleventh Amendment
immunity in actions in Federal court or to waive its inherent
sovereign immunity in actions filed in the courts of some other
state.  Section 12-201 is plainly limited to an action in a
Maryland Court.").

The Board concedes that a limited sovereign immunity waiver is pertinent to the case at hand, but argues that since all of Ms. Forte's claims relate back to the Settlement Agreement, they are contractual in nature and governed by S.G. 12-201.  As a result, in its view all claims must be dismissed on timing and venue grounds, since Ms. Forte filed her action in federal, not state, court more than a year after she was discharged.  From the plain language of C.J.P. 5-518, it is clear that this statute has some applicability to the case at hand.  Defendant is, uncontrovertibly, a county Board of Education that serves as an arm of the state.  See James v. Frederick Cnty. Pub. Schs., 441 F. Supp. 2d 755, 760 (D. Md. 2006) ("This court has made clear, consistently and repeatedly, that the county boards of education of Maryland are state agencies.")  As such, any claim against the Board is limited by a statutory ceiling, unless the claim is subject to some other waiver of immunity.  The first question for the Court is precisely how the separate limited waiver of immunity of S.G. 12-201 interacts with C.J.P. 5-518 to limit the claims that Ms. Forte can bring in this court.

Ms. Forte argues that C.J.P. 5-518 applies to all claims, overshadowing the limitations of S.G. 12-201, and the Board's reliance on an unpublished Fourth Circuit opinion is inappropriate.  First, she points to Zimmer-Rubert for the proposition that "'the words "any claim" cannot reasonably be

read to exclude certain categories of claims.'"   ECF No. 16 at 6

(quoting 973 A.2d at 241).   She also directs the Court's

attention to <u>Lee-Thomas</u>'s interpretation of C.J.P. 5-518 as a

"'broad and unambiguous' waiver of a general sovereign immunity

defense."   666 F.3d at 254.   Next, Ms. Forte attacks the Board's

reliance on an unpublished Fourth Circuit decision, <u>Gilliland v.</u>

<u>Bd. of Educ. of Charles Cnty.</u>, which held that a Board's

immunity was not waived as to a Fair Labor Standards Act claim

because such claim was contractual in nature and C.J.P. 5-518

does not apply to contract claims.   526 Fed. App'x 243, 249 (4th

Cir. 2013).   What she does not address is the Maryland Court of

Appeals decision in <u>BEKA Indus. v. Worcester Cnty. Bd. of Educ.</u>,

18 A.3d 890 (Md. 2011), which the <u>Gilliland</u> court used as the

foundation of its opinion.   In <u>BEKA Industries</u>, the court

explicitly declined to apply C.J.P. 5-518 in favor of S.G. 12-

201 to govern a contractual dispute between a county board of

education and a construction contractor.   <u>Id.</u> at 899-900.   This

decision leads this Court to conclude that S.G. 12-201 will

apply to contract claims and C.J.P. 5-518 will apply to "tort or

insurable claim, such as those for personal injury, and for

claims arising from alleged employment law violations."   <u>Id.</u> at

222.

   The Board argues the reverse, that S.G. 12-201 eclipses the

parameters of C.J.P. 5-518.   The Board urges the Court to

conclude that, but for the contractual obligations between the
parties, the allegedly discriminatory actions would not have
occurred.  The Board encourages that S.G. 12-201's immunity
provisions would apply to all of Ms. Forte's claims and this
case should be dismissed.  ECF No. 15-1 at 15.  It contends that
the Court should apply the same logic as the Gilliland court did
to the plaintiff's Fair Labor Standards Act claim, and dismiss
Ms. Forte's ADA claims.

The Board, however, misreads the holding of Gilliland.  In
Gilliland, the Fourth Circuit declined to extend the immunity
waiver of C.J.P. 5-518 because a Fair Labor Standards Act Claim,
regardless of the underlying facts, was contractual in form,
rather than tort or quasi-tort as covered by C.J.P. 5-518.
Gilliland, 526 Fed. App'x at 249 ("Unlike discrimination claims,
which the Maryland courts have concluded are in the nature of
personal injury claims, FLSA claims 'are contractual in their
nature.'") (quoting Roland Elec. Co. v. Black, 163 F.2d 417, 426
(4th Cir. 1947)).  Thus, the overarching nature of the suit
rather than the particularities of the case was crucial to the
Court's decision.  Here, Ms. Forte has pled claims both
contractual and tortious in nature, which she is free to do
under the Court's rules of alternative pleading.  Fed. R. Civ.
P. 8(d)(2)&(3); RaceRedi Motorsports, LLC v. Dart Mach., LTD,
640 F. Supp. 2d 660, 666 (D. Md. 2012) ("Rule 8(d)(2), however,

permits a party to plead multiple, and when necessary, inconsistent claims."). It also seems manifestly unjust that allegedly discriminatory actions are to be thrown out with the contract claim bath water when the Maryland General Assembly and state courts have clearly abrogated a County Board of Education's immunity when discrimination is involved.

The answer lies in the middle. Under BEKA Industries and a prudential reading of the two statutes, the Court finds that S.G. 12-201 applies to Ms. Forte's contractual claims and C.J.P. 5-518 applies to her ADA claims. To broadly apply S.G. 12-201 undermines the remedial protections established in federal employment discrimination laws and would also require a departure from practice in this Court. To similarly use C.J.P. 5-518 with a broad stroke counters the State's vested and explicit interest in adjudicating contract claims in its own courts. It would also violate the tenet that, when a settlement agreement is violated, "the gravamen of such employee's grievance lies in contract." Sharafeldin v. Md. Dep't of Pub. Safety and Corr. Servs., 94 F. Supp. 2d 680, 686 (D. Md. 2000).

This conclusion is also consistent with Judge Russell's recent decision in Davenport v. Anne Arundel County Board of Education, Civ. No. GLR-12-1335, 2012 WL 6043641 (D. Md. Dec. 4, 2012). In Davenport, the plaintiff brought both age discrimination and breach of contract claims stemming from the

13

defendant's failure to hire plaintiff through contractually obligated means.  Judge Russell applied S.G. 12-201 to grant immunity on the breach of contract claims and C.J.P. 5-518(c) to deny immunity as to the discrimination claims, even though the discrimination claim, as here, would not have arisen without the contractual obligations of the defendant.  Here, the Court will apply the same reasoning.  C.J.P. 5-518 will apply as a limited waiver of the Board's immunity under the ADA, and the Court will deny Defendant's motion to dismiss as to Counts I-IV.[4]

Count IX of the Complaint – Enforcement of a Federal Settlement Agreement – must be dismissed under S.G. 12-201 unless the Board specifically and unambiguously consented to suit in this court.  Sharafeldin, 94 F. Supp. 2d at 686 (holding that a breach of a settlement agreement may only be heard in federal courts if the State has consented by "the most express language.") (quoting Edelman, 415 U.S. at 673) (emphasis in original).  It has not done so.  Although Ms. Forte argues that the language of the settlement agreement encapsulates the instant action, her interpretation is not supported by the case law she cites and Judge Grimm's prior ruling.

---

[4] As Ms. Forte concedes that "ADA claims are justiciable against state agencies for damages up to $100,000," ECF No. 16 at 9, the Court will cap her recovery under the ADA to $100,000.  The Court notes, however, that since Ms. Forte's Rehabilitation Act claims are not subject to the cap, applying the limit of C.J.P. 5-518 may be an exercise of potentially limited use.

The Settlement Agreement between Ms. Forte and the Board provides that Judge Grimm would retain jurisdiction for the "sole purpose" of resolving "any dispute that arises over the interpretation and implementation" of the Agreement.  ECF No. 13 ¶ 25.  Ms. Forte would have the Court analogize this language to a contract interpreted by the Fifth Circuit in Watson v. Texas, 261 F.3d 436 (5th Cir. 2001).  The Watson court held that the state had waived its sovereign immunity defense when it consented to a dispute clause that stated the parties "agree to present any disputes under this Settlement Agreement, including without limitation any claims for breach or enforcement."  261 F.3d at 441.  The language in the two clauses, is clearly distinct, as Watson interpreted "any dispute" for "claims for breach or enforcement" while here the Court is asked to determine whether "sole purpose" and "interpretation and implementation" extend to the situation at hand.  The language of the Settlement Agreement indicates that Judge Grimm's "sole purpose" is to resolve issues in two areas: interpretation and implementation.  The Board's failure to continue to abide by the Settlement Agreement once it is interpreted and implemented does not fall within the federal court's jurisdiction.  Judge Grimm confirmed as much when he declined to adjudicate the parties' claim for "breach" of the Settlement Agreement rather than a question regarding execution of the contract.  ECF No. 16-8 at

2.  Accordingly, the Board has not waived or broadened its
limited S.G. 12-201 waiver in this case, and Count IX shall be
dismissed.  See Kokkonen v. Guardian Life Ins. Co. of America,
511 U.S. 375, 381-82 (1994) ("The facts to be determined with
regard to such alleged breaches of contract are quite separate
from the facts to be determined in the principal suit, and
automatic jurisdiction over such contracts is in no way
essential to the conduct of federal court business. . . .
Absent [an independent basis for federal jurisdiction],
enforcement of the settlement is for state courts.").

     The Board makes two final arguments to limit the nature of
Ms. Forte's relief.  They argue that Ms. Forte's claims are
related to the Board's retaliation against her and any relief
may only be injunctive and not monetary in nature, or, in the
alternative, if monetary relief is available, Forte's relief is
limited to compensatory damages, as punitive relief is not an
available remedy under 504 of the Rehabilitation Act and the
Board, as a government body, is exempt from punitive damages
under the ADA.  The Court declines to address the Board's
argument that retaliation claims are limited to injunctive
relief, as Ms. Forte has alleged sufficient conduct on behalf of
Board employees to constitute claims of conduct both directly
prohibited and retaliatory in nature.  See Evans v. Larchmont
Baptist Church Infant Care Center, Inc., 956 F. Supp. 2d 695,

16

709 (E.D. Va. 2013) (citing <u>EEOC v. Rite Aid Corp.</u>, 750 F. Supp. 2d 564, 571 n.5 (D. Md. 2010)).  The Court will, however, grant the Board's request to strike punitive damages from Ms. Forte's prayer for relief. <u>See</u> <u>Teasdell v. Baltimore Cnty. Bd. of Educ.</u>, 2013 WL 4804736 (D. Md. Sept. 6, 2013) ("Although punitive damages are generally available in suits brought under the ADA, the statute specifically exempts . . . government agenc[ies]."); <u>Barnes v. Gorman</u>, 536 U.S. 181, 189 (2002) ("[P]unitive damages may not be awarded . . . in suits brought under . . . § 504 of the Rehabilitation Act.").

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss will be granted in part and denied in part.  A separate Order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED:    December 4, 2014

17